# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

|  |  |
|---|---|
| Gloria Robinson Johnson, | ) |
| | ) |
| | )  Civil Action No. |
| | )  5:14-cv-02188-JMC |
| Plaintiff, | ) |
| | ) |
| v. | )  **ORDER** |
| | ) |
| Masonite International Corporation, | ) |
| | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on Defendant Masonite International Corporation's ("Masonite") Motion for Summary Judgment filed on January 9, 2015. (ECF No. 36.) Plaintiff Gloria Robinson Johnson ("Johnson"), proceeding *pro se*, brought this action against Masonite alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"). (ECF Nos. 1, 4, 9.)[1]

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(g) for the District of South Carolina, the matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling. On June 9, 2015, the Magistrate Judge issued a Report and Recommendation (the "Report") recommending that the court grant Masonite's Motion for Summary Judgment. (ECF No. 45.) Johnson has filed an Objection to the Report (ECF No. 47) and Masonite filed a Reply (ECF No. 48). For the following reasons, the court **ACCEPTS** the Report (ECF No. 45) and **GRANTS** Masonite's Motion for Summary Judgment (ECF No. 36).

---

[1] The court notes that Johnson's Complaint (ECF No. 1) does not specify the discrimination she believes she suffered, but her Answers to Local Civ. Rule 26.01 interrogatories mention age discrimination (ECF No. 4). The previously assigned United States Magistrate Judge construed the Complaint as bringing only an age discrimination claim and Johnson has not objected to such construction. (See ECF No. 14 at 1 n.2.)

1

### I. JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

### II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Masonite employs around 120 full-time hourly workers at its facility in Denmark, South Carolina ("Denmark Plant") and supplements its work force with temporary employees provided by Randstad US L.P. ("Randstad"). (ECF No. 45 at 2 (citing ECF No. 36-2 ¶¶ 5-6).)[2] Randstad is a temporary staffing agency that provides personnel to its business clients, such as Masonite, to meet the clients' temporary staffing needs. (ECF No. 36-2 ¶¶ 5-6.) The temporary employees are employed by and paid by Randstad. (Id.) Randstad charges Masonite an hourly rate for work performed by the personnel. (Id.) Randstad employs a supervisor at the Denmark Plant to handle issues that arise regarding Randstad workers. (Id. ¶ 7 (indicating that the Randstad supervisor assigned to work at the Denmark Plant between January and May 2013 was Andrew Jaramillo).) Between January and May 2013, Randstad assigned around nine temporary employees, including Johnson and her husband, to work at the Denmark Plant. (Id.)

In her Complaint, Johnson, a sixty-nine year old woman, alleges that she and her husband were "hired by Randstad Staffing to work for [Masonite]." (ECF Nos. 1 at 3, 47 at 3.) Johnson alleges that Masonite offered her an "employee hand package" and told her that "after ninety days we would be permanent workers for Masonite." (ECF No. 1 at 3.) At Johnson's deposition, she testified that she was paid by Randstad; however, she insisted that she never worked for Randstad. (ECF No. 36-3 at 5, 28-30 (stating that, though she was hired by Randstad, she believed at all relevant times and was told by Mann that she was "officially" a Masonite

---

[2] Affidavit of Stephen A. Mann ("Mann"), Automated Line Production Supervisor at the Denmark Plant. (ECF No. 36-2.)

employee).)  Johnson alleges that from March through May 2013, she suffered physical and verbal abuse from a younger co-worker.  (ECF No. 1 at 3; ECF No. 36-3 at 36.)  After an incident between Johnson and the younger co-worker, Johnson stated that upper management wanted her to leave or they would call the police.  (ECF No. 1 at 4 (alleging that she was fired); but see ECF No. 36-1 at 5-7, 12-13 (responding that Johnson quit).)

### III.  LEGAL STANDARD

*A. The Magistrate Judge's Report and Recommendation*

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court reviews *de novo* only those portions of a Magistrate Judge's recommendation to which specific objections are filed, and reviews those portions which are not objected to – including those portions to which only "general and conclusory" objections have been made – for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

*B. Summary Judgment*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248-49 (1986).  In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  See Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  "Mere unsupported speculation . . . is not enough to

defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

"In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor." Tavernier v. Healthcare Mgmt. Assocs., Inc., C/A No. 0:10-01753-MBS, 2012 WL 1106751, at *5 (D.S.C. Mar. 30, 2012) (citing Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002)). "The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party." Id. (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000)).

C. ADEA

The ADEA makes it unlawful for an employer to discriminate on the basis of age against its employees. See 29 U.S.C. § 623(a). "[A]n 'individual' only has a cause of action under this provision if he is an 'employee.'" Mangram v. Gen. Motors Corp., 108 F.3d 61, 62 (4th Cir. 1997) (quoting Garrett v. Phillips Mills, Inc., 721 F.2d 979, 980 (4th Cir. 1983)). In addressing a Title VII employment discrimination claim that involved a plaintiff hired by a temporary employment agency to work at another company, the United States Court of Appeals for the Fourth Circuit held that the joint employment doctrine is the law of this Circuit and noted that "the [hybrid] test applied in Title VII cases was appropriate for resolving employee status issues in ADEA cases." Butler v. Drive Auto. Indus. of America, Inc., 793 F.3d 404, 409, 412 (4th Cir. 2015) (quoting Garrett, 721 F.2d at 981 (indicating that the hybrid test employed by the Garrett court consisted of twelve factors to determine an employment relationship);[3] see Haavistola v.

---

[3] The factors adopted in Garrett are:

> (1) the kind of occupation . . . (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the

4

Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 219 n.2 (4th Cir. 1993) (stating that the "operative language in ADEA is identical to the operative language in Title VII, so the analysis utilized under either act is interchangeable").

In Butler, the Fourth Circuit stated that "our previous statements of the hybrid test, involving the analogous but legally distinct independent contractor context, do not adequately capture the unique circumstances of joint employment." Butler, 793 F.3d at 414 (indicating that certain factors are irrelevant to the joint employment context). The Butler court articulated a new set of factors to use in assessing whether an individual is jointly employed by two or more entities:

> (1) authority to hire and fire the individual; (2) day-to-day supervision of the individual, including employee discipline; (3) whether the putative employer furnishes the equipment used and the place of work; (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes; (5) the length of time during which the individual has worked for the putative employer; (6) whether the putative employer provides the individual with formal or informal training; (7) whether the individual's duties are akin to a regular employee's duties; (8) whether the individual is assigned solely to the putative employer; and (9) whether the individual and putative employer intended to enter into an employment relationship.

Id. (noting that no factor is dispositive, that the common law element of control remains the "principal guidepost" in the analysis, and that courts can modify the factors to the specific industry context). Importantly, the Fourth Circuit indicated that the first three factors are the most important. Id. at 414-415.

---

> method of payment . . . (6) the manner in which the work relationship is terminated . . . (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

See Mangram, 108 F.3d at 62-63 (quoting Garrett, 721 F.2d at 982) (summarizing Garrett factors).

5

## IV.  ANALYSIS

*A.  The Report and Recommendation*

The Magistrate Judge found that Masonite was entitled to summary judgment on Johnson's ADEA claim.  Applying the common law of agency and the traditional master-servant doctrine, the Magistrate Judge determined that Johnson had failed to provide any evidence that she was an employee of Masonite.  (ECF No. 46 at 5.)  Masonite had provided evidence that Johnson was hired by, paid by, and received unemployment benefits from Randstad.  (Id.)  Without addressing the merits of Johnson's claim, the Magistrate Judge concluded that Johnson was an employee of Randstad, and therefore, recommended that Masonite's Motion for Summary Judgment be granted.  (Id. (emphasizing that the ADEA does not provide a private cause of action absent an employment relationship).)

*B.  Johnson's Objections*

Johnson raises five objections in which she contends that the Magistrate Judge erred by: (1) referencing a September 29, 2015 pretrial proceeding;  (2) failing to recognize that she was an older person being discriminated because of her age; (3) mistakenly identifying Andrew Jaramillo as the Randstad site manager from January to May 2013 instead of John Labonbard; (4) failing to consider that she did not receive discovery information and evidence from Masonite and that had she received such information, she could prove an employment relationship with Masonite; and (5) failing to acknowledge that she was paid through Randstad by Masonite and that she had no choice but to draw unemployment from Randstad as that is how the benefits were set up.  (ECF No. 47.)

*C.  Masonite's Reply*

Masonite maintains that Johnson's objections should not be considered as they do not direct the court to any specific errors in the Report and simply restate arguments previously presented.  (ECF No. 48 at 3.)  Moreover, Masonite maintains that it had no additional

documents to provide Johnson during discovery.  (Id.)  Finally, Masonite argues that none of Johnson's arguments "disturbs the finding that no employment relationship between the parties existed." (Id. at 4 (agreeing with the Report's conclusion that without an employment relationship, Johnson's claims should be dismissed).)

D. *The Court's Review*

Upon the court's review of Johnson's objections, the court first finds that the Report commits a harmless clerical error in its reference to September 29, 2015 pretrial proceedings as opposed to September 29, 2014 pretrial proceedings.  (See ECF Nos. 31, 45 at 1.)  The court hereby accepts September 29, 2014 as the correct date of when the case was reassigned.  Next, the court reminds Johnson that the reason for the Magistrate Judge's dismissal of her Complaint is not her age, but her failure to demonstrate an employment relationship with Masonite.  Finally, with respect to Johnson's remaining objections, the court finds that they are insufficient to disturb the Magistrate Judge's conclusion that she had not demonstrated an employment relationship with Masonite.

Although the Magistrate Judge's Report did not apply the joint employer test articulated in Butler, a review of the facts presented in the Complaint confirms the Magistrate Judge's conclusion that Masonite was not her employer.[4]  A finding that Randstad exercises the more formal functions or legal formalities of an employment relationship like hiring and firing will not preclude Masonite from exercising effective or actual control over an employee's employment. See Butler, 793 F.3d at 415 (finding that defendant was a joint employer with the employment agency when the employment agency acquiesced to all of defendant's requests to discipline or terminate temporary employees, defendant supervised both sets of employees, both sets of employees performed the same tasks, and the work performed by the temporary employees were

---

[4] While accepting the Report in its entirety, based on the facts presented, the court finds that application of the joint employer test articulated in Butler (as opposed to the common law of agency and the traditional master-servant doctrine referenced in the Report) is necessary.

not peripheral or tangential to defendant's core business).  The court observes that by its very nature, the relationship between a temporary employee, the staffing agency, and the company at which the temporary employee works, would tend to trigger the concern articulated in Butler.  In Butler, the court explained that the "hybrid test, as we have articulated it, specifically aims to pierce the legal formalities of an employment relationship to determine the loci of effective control over an employee, while not discounting those formalities entirely."  Id. (emphasizing that otherwise "an employer who exercises actual control could avoid liability by hiding behind another entity").  Here, the record indicates that Randstad hires, pays, fires, and provides some supervisory personnel to address issues arising with its temporary employees placed at Masonite.  Unlike Butler, Johnson has not presented facts that demonstrate that Masonite had effective control over the circumstances of her employment.  Therefore, the court finds that Johnson has failed to demonstrate that Masonite is her joint employer.

## V.  CONCLUSION

For the aforementioned reasons, the court **ACCEPTS** the Report (ECF No. 45) and **GRANTS** Masonite's Motion for Summary Judgment (ECF No. 36).

**IT IS SO ORDERED.**

United States District Judge

September 15, 2015
Columbia, South Carolina

8